## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|   |   |   |   |
|---|---|---|---|
| 1. | NANCY WILLIAMS, | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| v. | | ) | CIV-19-1028-SLP |
| | | ) | |
| 1. | PATTERSON-UTI MANAGEMENT | ) | |
| | SERVICES, LLC, and | ) | |
| 2. | PATTERSON-UTI ENERGY, INC., | ) | |
| | | ) | ATTORNEY LIEN CLAIMED |
| | Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Nancy Williams, and for her Complaint against Defendants alleges and states as follows:

## PARTIES

1.     Plaintiff, Nancy Williams, is an adult female resident of Grady County, Oklahoma.

2.     Defendants are:

a.     Patterson-UTI Management Services, LLC, an entity doing business in and around Oklahoma County, Oklahoma; and

b.     Patterson-UTI Energy, Inc., an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on the following claims: (a) gender discrimination, harassment, the creation of a gender-based hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964; (b) religious discrimination, harassment, the creation of a religious-based hostile work environment, and retaliation in violation of Title VII of the Civil

Rights Act of 1964; and (c) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities.

4.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, thus jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.     To the extent required, Plaintiff exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission on or about February 7, 2019.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated on or about September 16, 2019, which Plaintiff received by mail thereafter.  Plaintiff has timely filed this action within ninety (90) days of her notice of right to sue.

6.     All of the actions complained of herein occurred in Oklahoma County, Oklahoma.  Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.     Defendants provide land drilling and pressure pumping services, directional drilling, rental equipment and technology to clients in the United States and Canada.

8.     Plaintiff was initially hired as a Project Manager with Defendants' predecessor (Chesapeake Energy) in or around 2005.  Her career flourished thereafter.

9.     She received multiple promotions and ultimately achieved the position of Director-Facilities, Real Estate and Administration in or around 2016.  She held this position at the time Defendants took over operations in or around 2016, and continued in this capacity for the remainder of her employment.

2

10.     Throughout her lengthy thirteen (13) year tenure with Defendants and their predecessors, Plaintiff was an excellent employee.  In addition to receiving multiple promotions, Plaintiff was regularly complimented on her work performance.  She received positive performance evaluations, as well as merit pay increases.

11.     Despite her good work performance, Plaintiff was constructively discharged from her employment on or about September 26, 2018.

12.     Significantly, her discharge came after she complained that she was subject to a hostile work environment based on her gender, discriminated against based on her religion, and retaliated against for having engaged in protected opposition to such unlawful acts.

13.     That is, in or around the Summer 2017, following some personnel changes, several employees working at the same location as Plaintiff asked her about switching offices.

14.     Her direct supervisor, Vice President-Supply Chain Keith Chometsky, and second-level supervisor, Chief Financial Officer John Vollmer, both located in Texas, said they would decide the seating assignments, but instructed Plaintiff to prepare a proposed seating chart.

15.     Consistent with the instruction she was given, Plaintiff submitted the proposed seating chart to Vollmer and Chometsky in or around August 2017.

16.     At or about the same time, however, a high-level employee who worked at the same location as Plaintiff  (President - Great Plains Jerome Loughridge, who was lateral to Vollmer) switched offices without seeking approval.

17.     Rather than taking the matter up with Loughridge (a male), on or about August 24, 2017, Vollmer called Plaintiff, with Chometsky present, and began berating her, unjustly accusing her of not doing her job and stating that Plaintiff (a female) did not "bring value"

3

to the company.

18.     This was so despite the fact that Plaintiff did exactly what Chometsky and Vollmer had asked her to do (i.e., prepare a seating chart).  She did not have any control over Loughridge.  Loughridge was not in her chain of command.  And, Loughridge held a higher level position than Plaintiff.  Thus, she did not have any authority to prohibit Loughridge from switching offices.

19.     On or about the same day as Vollmer's call, Plaintiff lodged an internal complaint based on the hostile work environment to which she was subjected.

20.     To further corroborate her complaint, Plaintiff identified two employees with whom she worked that overheard Vollmer yelling and berating her.

21.     Neither of the employees were interviewed.  Instead, Vice President-Human Resources Diana Dotolo told Plaintiff that she talked with Chometsky who acknowledged Vollmer was "abrasive," but said Plaintiff was going to have to get used to the "new culture."

22.     On or about March 8, 2018, Chometsky presented Plaintiff with her annual performance evaluation.  Therein, Chometsky scolded Plaintiff for having complained about Vollmer.

23.     Chometsky stated Plaintiff needed to "know when to back down and close an issue."  He cited her complaint about the "[c]onf[erence] call with J[ohn] V[ollmer] as an example."  And, he engaged in additional acts of retaliation thereafter.

24.     For example, on or about July 3, 2018, Chometsky issued Plaintiff a written warning.  The warning (which was the first Plaintiff had received) accused Plaintiff of failing to disclose a supposed friendship she had with a vendor.

25.     The stated basis for the write-up was pretext. The vendor was a business acquaintance of Plaintiff – she did not have a "close friendship" or attend church with the

4

vendor, as was claimed.

26.     When presented with the write-up, Chometsky also chastised Plaintiff about her religious beliefs.  Particularly, he commented about a bible she kept on her desk and a cross necklace that she wore.

27.     Chometsky said he was not going to demand Plaintiff remove such items "at th[at] time."  However, his comments indicated his hostility toward her based on her Christian beliefs.  And, Chometsky snidely commented multiple times prior to writing Plaintiff up about her being "into that God thing."

28.     In further effort to coerce Plaintiff out of her employment, Chometsky also began unjustly accusing Plaintiff of not meeting goals and deadlines.  However, Plaintiff, in fact, met her goals and deadlines.  And, she sent Chometsky documentation establishing this was so.

29.     On or about July 30, 2018, Plaintiff sent an email to Senior Counsel Jamie Fishman, as well as Vice President-Human Resources Lynn Fox, complaining that she felt she was being discriminated against and addressing the pretextual nature of the write-up she was given.  Plaintiff specifically complained about, among other things, that she and others on her team were being "targeted because of their Christian faith."  Plaintiff then sent another email on or about August 10, 2018, complaining of other unlawful acts being committed.

30.     Plaintiff not only complained she was being subject to "retaliation" for her complaints against Vollmer, but she also complained of various safety violations creating a risk to the environment and health, safety and welfare of the public and employees of Defendants.

31.     By way of example, Plaintiff complained that in or around February 2018, she and others with whom she worked discovered two cranes had not been inspected and another

failed inspection, but was not locked and tagged (allowing its continued use).

32.     Plaintiff also complained about, among other things, that Defendants were endangering the environment by abandoning facilities with oil and fluid spills "everywhere."

33.     Plaintiff's complaints were ignored. Plaintiff identified individuals who could substantiate her complaints. Yet, the individuals were not contacted or interviewed regarding the matters about which Plaintiff complained.

34.     In her August 10, 2018 email, Plaintiff expressed her concern that she would be subjected to further "retaliation" for her complaints. And, her fears were validated in that Chometsky began constantly badgering Plaintiff without justification. He accused Plaintiff of not meeting deadlines when, in fact, Plaintiff had documentation showing the deadlines were met. He was also dismissive of recommendations Plaintiff made. By way of example, Chometsky repeatedly told Plaintiff the print shop was unnecessary despite Plaintiff's recommendations to maintain the print shop due to proven cost savings. However, after Plaintiff's discharge, Chomestsky commended a male employee for the cost savings achieved by maintaining the print shop.

35.     Ultimately, the conditions of Plaintiff's employment were so intolerable that she was  forced out of her job and constructively discharged on or about September 26, 2018.

36.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I:  Title VII (Gender)

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination, harassment, the creation of a gender-

based hostile work environment and retaliation.

38.     Plaintiff is entitled to relief under Title VII for gender discrimination because Plaintiff is female; she was qualified for her job; she was given an unfavorable performance evaluation, was written up and constructively discharged; and her job was not eliminated.

39.     Plaintiff is also entitled to relief under Title VII for gender-based harassment and the creation of a gender-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subjected to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from gender-based animus.

40.     Plaintiff is further entitled to relief under Title VII for retaliation because Plaintiff engaged in protected opposition to gender discrimination and harassment; she suffered adverse actions, including *inter alia* a lowered performance evaluation, write-up and constructive discharge subsequent to the protected activity; and a causal link exists between the protected activity and the adverse actions.

41.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

42.     Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: Title VII (Religion)

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

43.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of religious discrimination, harassment, the creation of a religious-based hostile work environment and retaliation.

44.     Plaintiff is entitled to relief under Title VII for religious discrimination because she suffered adverse employment actions; at the time the actions were taken, her performance was satisfactory; and additional evidence, including *inter alia* the disparaging remarks made about her religion, support the inference that the actions were taken because of a discriminatory motive.

45.     Plaintiff is also entitled to relief under Title VII for religious-based harassment and the creation of a religious-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from religious-based animus.

46.     Plaintiff is further entitled to relief under Title VII for retaliation because Plaintiff engaged in protected opposition to religious discrimination and harassment; she suffered adverse actions and a causal link exists between the protected activity and the adverse actions.

47.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

48.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III: *Burk* Tort

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

49.     The acts above-described constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing

an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

50.    More particularly, Plaintiff suffered adverse employment actions in retaliation for complaining of various safety hazards in violation of Oklahoma law, including but not limited to the Oklahoma Environmental Quality Act, Okla. Stat. tit. 27A §§ 1-1-102, *et. seq.*, and Oklahoma Solid Waste Management Act, Okla. Stat. tit. 27A §§ 2-10-101, *et. seq.* (making clear the public policy to protect the public health, safety and welfare, as well as the environment); the Oklahoma Protection of Labor Act, Okla. Stat. tit. 40 §174 (making clear that cranes shall be safe and operated in manner to give proper and adequate protection to life and limb of any person); *Neely v. Southwestern Cotton Seed Oil Co.*, 13 Okla 356, 75 P. 537, 540 (1903) (recognizing it is the duty of the employer to furnish a reasonably safe workplace); *Young v. Bob Howard Automotive*, 2002 OK CIV APP 80, 52 P.3d 1045, 1052 (same).

51.    Plaintiff has suffered injuries and is entitled to recovery all damages or other relief allowed by state law, including but not limited to, lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendants and award actual and compensatory damages, back pay, front pay, emotional distress damages, punitive damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this <u>8th</u> day of November, 2019.

 S/ Jana B. Leonard
JANA B. LEONARD, OBA #17844
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
OKLAHOMA CITY, OK 73139
(405) 239-3800 Telephone
(405) 239-3801 Facsimile
leonardjb@leonardlaw.net
haupts@leonardlaw.net

ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED